## GEORGE P. ROBERTSON ET AL V. CONNECTICUT GENERAL LIFE INSURANCE COMPANY ET AL.

No. 7450. Decided February 21, 1940.
Rehearing overruled March 27, 1940.
(137 S. W. 2d Series, 760.)

*Cureton & Cureton,* of Meridian, and *W. V. Dunnam,* of Waco, for appellants.

From the language of the contract it is clearly expressed that it was the intention of the mortgagor to require payment by the mortgagee of the ad valorem tax assessable against the notes and the contract is not susceptible of any meaning other than that the mortgagees are obligated to pay such tax at any place where the owner might fix as a situs for taxation. 48 C. J. 1045, Sec. 1; 10 Tex. Jur. 316, Sec. 182; Hewitt v. Citizens Saving Bank & Tr. Co., 119 S. W. (2d) 1073; Shropshire v. Com-

merce Farm Credit Co., 120 Texas 400, 30 S. W. (2d) 282, 39 S. W. (2d) 11.

*Read, Lowrance & Bates,* of Dallas, and *Byran & Maxwell,* of Waco, for appellee.

The tax clause, as restricted by the proviso, imposed no obligation on the appellants to pay ad valorem taxes on the note. Great So. Life Ins. Co. v. City of Austin, 112 Texas 1, 243 S. W. 778; Bick v. Beach, 206 U. S. 392, 51 L. Ed. 1106; Aetna Ins. Co. v. Long, 123 Texas 500, 72 S. W. (2d) 588; Hamilton v. Bill, 90 S. W. (2d) 929; Marble Saving Bank v. Davis, 124 Texas 560, 80 S. W. (2d) 298.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals Section A.

The tentative opinion of the Court of Civil Appeals contains a concise and admirable statement of the pertinent facts. This statement is in part as follows:

"This is a usury suit. George P. Robertson and wife brought this suit against Connecticut General Life Insurance Company and Dallas Bank & Trust Company to cancel a debt and deed of trust lien on the ground that the contract provided for a usurious rate of interest and that the payments which had been made as interest were sufficient to discharge the principal debt. The Connecticut General Life Insurance Company reconvened and sought judgment for its debt with foreclosure of its lien. The undisputed facts and the material findings of the jury are as follows:

"On October 15, 1909, Robertson and wife executed to A. H. Kahler a note for $3500.00, due in five years and secured by a first deed of trust lien on the land in question. The record does not disclose the rate of interest borne by this note but it is asserted in the brief that it bore eight per cent per annum. In addition, said deed of trust contained a provision requiring the debtors to pay the taxes assessed against the note or bond under certain conditions. This tax clause will be set out in full later. At the same time they executed a second lien to secure the payment of a note in the sum of $353.30, payable in five annual installments to cover additional interest on the principal note. The principal note above referred to was assigned to National Life Insurance Company on November 29, 1909, and was later assigned to United States Bond & Mortgage Company on October 16, 1914. On November 1, 1914, Robertson and wife executed and delivered to United States Bond & Mortgage Company a

deed of trust to secure the payment of a note in the sum of $3500.00, due on the first day of November, 1919, and bearing interest at the rate of 6 1/2 per cent per annum. This note was secured by a first deed of trust lien on the land in question, which deed of trust contained the tax clause above referred to, requiring the debtors to pay taxes assessed against the note and bond under certain conditions. On the same day the debtors executed a second deed of trust to the same concern to pay a note in the sum of $350.00, payable in two installments of $175.00 each, but the record does not disclose when these installments were due. The evidence does show that one of these installments was paid in 1915 and the other in 1916 and it may be inferred therefrom that they were payable during said years. This second note purported to represent a part of the interest charged on the first note. The principal note was assigned to National Life Insurance Company on November 30, 1914, and was later assigned by that company to Dallas Trust & Savings Bank (now Dallas Bank & Trust Company) on June 16, 1920. On October 22, 1919, Robertson and wife executed to Dallas Trust & Savings Bank a note for $3500.00, due on first day of November, 1924, bearing interest at 6 per cent per annum. This note was secured by a first deed of trust on the land in question, which contained the tax clause above referred to. Said deed of trust recited that the note therein secured was given in lieu of and in extension of the note previously executed to United States Bond & Mortgage Company, which note had been taken up and extended by Dallas Trust & Savings Bank at the request of the debtors. At the same time the debtors executed a second deed of trust to secure the payment of five notes in the sum of $35.00 each, payable annually, which notes purported to represent a part of the interest charged on the principal note. The principal note last above described was assigned to National Life Insurance Company on May 8, 1920, and was reassigned to Dallas Trust & Savings Bank on November 5, 1924. On November 1, 1924, Robertson and wife executed to Dallas Trust & Savings Bank a note for $7500.00, due November 1, 1934, and bearing interest at the rate of 6 per cent per annum. This deed of trust securing the same contained the tax clause above referred to. It recited that said note was given partly in lieu and extension of the balance due on the note executed in 1919, and that the Dallas Trust & Savings Bank, at the debtors' request, had advanced the money necessary to take up and extend said indebtedness. The balance of said loan, $4000.00, represented new money advanced to the debtors at the time of the execution of the last lien. On the same day, Robertson and wife

executed a second deed of trust to the same creditor to secure the payment of five notes for $75.00 each, one payable each year as interest on the principal note. The principal note last above referred to was assigned to Connecticut General Life Insurance Company on February 4, 1925. All of the notes above referred to provided for interest at 10 per cent per annum after maturity and the deed of trust securing same provided for acceleration of maturity in certain contingencies. The combined tax rate for the County of Dallas and State of Texas for the years 1917 to 1935, inclusive, varied from $1.02 to $1.69 on the one hundred dollar valuation and the tax rate for the City of Dallas for the same period varied from $1.89 to $2.47 on the one hundred dollar valuation. There was no showing as to the basis of valuation of property for tax purposes in the city and county of Dallas prior to the year 1931. During the years 1931 to 1934, inclusive, the basis for assessment for city purposes in the City of Dallas was 45 per cent of the value of the property, and during the years 1935 and 1936, the basis for the same purposes was 52 per cent of the value of the property. There was no showing as to the basis of assessment for county and state taxes for any of the years in question. The Connecticut General Life Insurance Company is a foreign corporation and during all the years that it owned the note here sued on, its home office was in Hartford, Connecticut. Said note was serviced by the Dallas Trust & Savings Bank, a Texas corporation, from 1925 to 1931, but during all the years in question, 1925 to 1934, said note was kept at the home office of the holder in Hartford. The debtors paid the interest installments as they accrued to the various holders of the several first lien notes up to and including the year 1930 and a part of the year 1931. They also paid the second lien notes to the holders thereof as they accrued.

"The jury, in answer to special issues, found that in the preparation of the loan contract of date October 22, 1919, and in the preparation of the loan contract of date September 22, 1924, the Dallas Trust & Savings Bank did not intend to exact or receive from the debtors a greater rate of interest than ten per cent per annum; that Dallas Trust & Savings Bank was the owner of the principal note in the sum of $3500.00 of date November 21, 1914, at the time the same was renewed and extended in 1919; that the note for $3500.00 of date October 22, 1919, was owned by Dallas Trust & Savings Bank at the time the same was renewed and extended by the contract of date September 22, 1924; that the principal note executed in 1924 was accepted by the Dallas Trust & Savings Bank for the purpose of resale to investors and that in the preparation of said

contract said creditor intended to require the debtors to pay all such taxes as might thereafter be levied against said note by the city and county of Dallas and State of Texas; that the Connecticut General Life Insurance Company purchased said $7500.00 note, of date 1924, with the intent to require the debtors to pay such taxes as might be assessed against said note; that from the year 1931 to 1936 inclusive, the Connecticut General Life Insurance Company, which was a foreign corporation, maintained a general office in Texas in the City of Dallas, but that the rate of the tax assessed by the City of Dallas, County of Dallas, and State of Texas, plus the interest as provided in the note of date September 22, 1924, during any one year, would not be an amount in excess of ten per cent as interest on the amount of said $7500.00 note; and that the debtors, in the execution of the loan contract of 1924, did not intend to thereby waive the privilege of thereafter interposing the defense of usury to any of the loan contracts above referred to. Upon motion, the trial court rendered judgment non obstante veredicto in favor of Connecticut General Life Insurance Company for its debt with foreclosure of its lien and denied plaintiffs the relief prayed for."

The court then discusses the proposition that even though the first and second loans may have been usurious, nevertheless the Connecticut General Life Insurance Company would not be chargeable on its principal note for $7500 with interest payments made to third parties on the first and second loans. The court next passed to the question of whether or not the loan of 1924 was usurious. It held that the contract, independent of what is designated the "Tax Clause," was not usurious. The questions certified to this court arise because of the tax provisions, and for convenience in the discussion of same we subdivide that clause into designated paragraphs. It is as follows:

"Whereas, for the better securing of said bond, with all interest to become due thereon to said Mortgagee, or its successors and assigns, the Mortgagor hereby covenants with the Mortgagee as follows:

"(a) That Mortgagor will pay said bond with the interest thereon as the same becomes due and payable;

"(b) That Mortgagor has a good and perfect title in fee simple to said property, and has a right to convey the same to the said Mortgagee, and to its successors and assigns, in this mortgage as aforesaid;

"(c) That Mortgagor will pay all taxes and assessments and premiums of insurance now due, or which may become due on

said premises, or chargeable against said premises, or said bond, or upon the interest in said premises of the Mortgagee, or its successors and assigns, before the same shall become delinquent;

"(d) Or, if at any time, any law either Federal or State, shall be enacted, imposing or authorizing the imposition of, any tax upon this mortgage, or upon said 'bond', or upon the principal or interest money secured by this instrument, by virtue of which the owner, for the time being, of the land above described, shall be authorized to pay any such tax upon said 'bond', or Mortgage, or the principal or interest of the debt secured, or upon either of them, and deduct the amount of such tax so paid from the debt hereby secured, or upon the rendering by any court of competent jurisdiction of a decision that the undertaking by the Mortgagor as herein provided to pay any such tax or taxes is illegal and inoperative, then or in any such event, the said principal sum hereby secured, and all interest thereon to the date of payment thereof, shall, at the option of the holder of said 'bond', be and become immediately due and payable, anything in this Mortgage or said 'bond' contained to the contrary notwithstanding;

"(e) Provided, this condition of this agreement shall not be construed to include any personal tax when imposed against the owner of said 'bond' or Mortgage at the residence or domicile of such owner."

As having some bearing upon the questions propounded we quote the acceleration clause in the main deed of trust of 1924, same being as follows:

"It is hereby further specially agreed that if any of said 'bond' or any installment of interest, or any taxes or assessments, or premiums of insurance or charge of any kind against said property which shall have been paid by the said Mortgagee, or its successors and assigns, remain unpaid for five days after the same are due, or in case any tax or assessment is assessed within the State of Texas against the debt or bond secured hereby, or the interest in said premises of the said Mortgagee, or its successors and assigns, or upon the rendering by any court of competent jurisdiction of a decision that the undertaking by the Mortgagor as herein provided to pay any tax or taxes, is legally inoperative, then at the option of the said Mortgagee, or its successors and assigns, the whole indebtedness and all sums secured by this mortgage, to-wit: The principal and interest then accrued on said bond, and all advances made to or on account of the undersigned, for taxes, assessments, premiums of insurance, and charges of every kind, shall at once become

due and payable, and the moneys due on said bond and for advances as aforesaid, may be collected by a sale under this mortgage, or by a suit in the courts of Dallas County, or otherwise, as the said Mortgagee or its successors and assigns, may elect; and in case said debt as evidenced by said bond, or any interest thereon, or any charge or charges accruing under the terms of this mortgage, shall be placed in the hands of an attorney for collection after maturity, or after the same have been declared to be due under the provisions hereof, or if placed in the hands of an attorney for collection before maturity under circumstances requiring collection by legal process, or for collection through the Courts of Bankruptcy, or through the Probate Court, then the said Mortgagor will pay ten per centum of the entire amount due as attorney's fees."

Question No. 1 is as follows:

"In view of the provision in the deed of trust that the agreement with reference to the debtors' obligation to pay taxes should not be construed to include 'any personal tax when imposed against the owner of said 'bond' or mortgage at the residence or domicile of such owner,' was it possible for the holder of the debt secured by said deed of trust to create a situation whereby the debtors could be required to pay such ad valorem taxes as might be assessed against said debt or the 'bond' evidencing same?"

■ Apparently, the quoted provision concerning any "personal tax when imposed against the owner of said bond" has caused some confusion on the part of the Court of Civil Appeals. The effect of that provision was strongly urged in oral argument. The meaning of the provision mentioned is to our minds reasonably clear. Subdivision (c) of the quoted clause is an outright covenant to the effect that the mortgagor will pay taxes on the bond. Subdivision (d) is a little unusual. It creates a condition on which an acceleration may be declared. Subdivision (e) follows immediately, and declares that, "provided *this* condition of this agreement shall not be construed to include any personal tax when imposed against the owner of said bond or mortgage at the residence or domicile of such owner." We are of the opinion that this provision relates directly to the preceding condition expressed in subdivision (d), and has no relation whatever to the covenant expressed in paragraph (c) ; and is no limitation thereon.

We therefore answer Question No. 1 Yes.

■ Question No. 2 is as follows:

"Was the burden on the debtors to prove and secure a finding from the jury that the parties at the time of entering into the contract contemplated that the ad valorem taxes which might be assessed against the 'bond,' when added to the interest stipulated therein, would be sufficiently high to make the total charge for the use of the money usurious?"

To this question we answer No. We think what was in the contemplation of the parties is clearly expressed in their language. They intended to require the debtor to pay "all taxes and assessments due——on the bond, or upon the interest in said premises of the mortgagee, or its successors or assigns." It is immaterial whether they contemplated that same would result in the interest rate exceeding ten per centum or not, if such result actually followed. They contemplated the natural result of their contractual stipulations.

The Court of Civil Appeals appears to be laboring under the impression that notwithstanding the imperative covenants of a contract as to payment of the taxes which may be assessed against a bond or mortgage, it must nevertheless be made to appear that at the very time of contracting the parties contemplated that the interest might thereby be increased beyond the legal rate. In the tentative opinion the court has said:

"This court, in the case of Duvall v. Kansas City Life Insurance Co., 96 S. W. (2d) 793, in an opinion by Chief Justice Gallagher, held that where the interest absolutely payable under the terms of a contract is less than the statutory maximum, whether a provision obligating the debtor to pay such taxes as might be assessed against the note rendered the transaction usurious depended on whether the parties thereto, in the light of the probable tax rate and the basis of assessment, contemplated at the time of entering into the contract that during some one or more years thereof the interest expressly reserved and the taxes which might become payable on the contingency stated would amount to more than ten per cent per annum on the unpaid principal, and that in order to render such contract usurious, it must affirmatively appear that the parties so contemplated. As we understand, this holding was sustained on appeal by the Supreme Court. Kansas City Life Ins. Co. v. Duvall, 129 Texas 287, 104 S. W. (2d) 11."

We think the court is in error in so construing the opinion of the Supreme Court above mentioned. While there may be isolated statements in the original opinion calculated to sustain such a conclusion, yet the court on motion for rehearing said:

"The instructions contained in its opinion for guidance upon another trial are necessarily modified by our holding that the construction of the loan contract as to whether it is usurious is a matter of law. The opinion of that court does not point out, *as is here done*, that it is *unnecessary* upon another trial for the court to submit to the jury the issue submitted upon the first trial relating to usurious intentions and knowledge on the part of the payees and assignee of the note."

It is appropriate we think to here refer to an apparent misunderstanding of the opinion of the Supreme Court in the case of Norris v. Land Mortgage Co., 98 Texas 176, 82 S. W. 500. In that case the mortgage contract contained a clause requiring payment of taxes on the bond or notes. By special plea the mortgage company alleged that such provision was put into the mortgage by mutual mistake. It was further alleged that the parties intended "solely to provide for the payment by the mortgagor of any tax or assessment on the mortgage that might be imposed by Texas legislation during the life of the mortgage, whereby the mortgagee would pay taxes on the landed security only to the value of his equity therein, and the remainder of the landed tax, or the difference between the full value of the security and the equity of redemption, would be imposed on the mortgage holder." The Supreme Court in effect held that if the tax clause in the mortgage had referred primarily to ordinary taxes, usury *had been shown, as a matter of fact, if not as a matter of law.* In this connection the court said:

"The contract, as written, binds the borrower to pay that which the law imposes on the lender—the taxes on the lender's own property. This exaction is made as a condition of the loan, and is therefore made for the 'use,' etc., of the money. When such a reservation in a contract necessarily makes the charge for the use of the money exceed 10 per cent, the contract, in our opinion, is necessarily usurious. But can it be said that this contract itself reserves more than 10 per cent? The levy for State purposes, made by permanent law, was only 34 cents on the hundred dollars. The levies for county and city purposes could hardly have been made for the year 1900 on the 1st of January of that year when the loan was contracted for, and it could not, upon mere construction of the contract, be said that the amount of such levies when made would be sufficient to make the interest exacted greater than 10 per cent. Under such conditions it can not, we think, be laid down as a broad proposition that such a stipulation, on its face, is unlawful. It might be otherwise if the contract reserved interest at the full lawful

rate, and, in addition, exacted the payment of taxes, whether the amount thereof were known or not. Mortimer v. Pritchard, 1 Bailey Eq. (S. C.), 505; Meem v. Dulaney, 88 Va., 674; Banks v. McClellan, 87 Am. Dec., 594. Such provisions as that under consideration were involved and discussed, but not very satisfactorily, in the cases cited.

"The question whether or not the contract as written was, as a matter of law, usurious on its face is not of great importance, because the trial court upon the evidence has found usury, which involves the idea that the parties, when they contracted, contemplated and intended the payment of more than 10 per cent, and this conclusion is probably justified by the common knowledge that the combined rate of the tax levies for State, county and city governments uniformly is and has been more than 1 per cent, which knowledge may well be imputed to these parties."

The court, however, held that parol proof was admissable to sustain the special plea of the mortgage company, because the tax clause would not make the loan usurious if, as alleged, it was intended to have reference only to taxes as to which there was no provision in law at the time of making the contract, and not reasonably within the contemplation of the parties.

■ However, in this connection a further statement is necessary. Under the holding in the case of Kansas City Life Ins. Co. v. Duvall, 129 Texas 287, 104 S. W. (2d) 11, as applied to the facts of this case, we are forced to the conclusion that the bond in question might find a situs for taxation in Dallas County, and that the contract contained elements which made it potentially usurious. However, the indebtedness bore only 7 per cent interest per annum. It certainly cannot be said that on its face it was unlawful. Norris v. Land Mortgage Co., supra. In order to show that it contained potentialities which would make it usurious, certainly it was incumbent on debtors to prove facts showing that under its terms the interest rate, by reason of tax levies, would at some time during the contractual life of the bond exceed 10 per cent. Without laying down any definite rule in this respect, we will say that, in our opinion, the burden would be upon the debtors to prove that under prevailing standards of valuation fixed from year to year, and under prevailing rate or rates fixed from year to year, the taxes which might be levied against the bond, when added to the interest contracted for, would cause the amount exacted to exceed the legal rate of 10 per cent per annum upon the amount

of the bond unpaid. If and when this fact be established then the contract is to be regarded as usurious from beginning; but until such fact be established it cannot be said as a matter of law that the contract was usurious. In this particular it is peculiarly within the province of the Court of Civil Appeals to first determine the status and effect of the facts as proven in the case.

■ Question No. 3 is as follows:

"If either of the loan contracts made prior to 1924 were usurious, did the debtors by the execution of the new note to Dallas Trust & Savings Bank of November 1, 1924, for the full amount of the principal of the old debt, under the circumstances set out in the opinion, thereby, as a matter of law, elect to treat all interest payments previously made as payments on interest and waive their right to have such payments credited as payments on the principal?"

The certificate in this case was filed in the Supreme Court before opinions in the cases of Temple Trust Co. v. Murfee, 133 Texas 53, 126 S. W. (2d) 643; Wallace v. B. H. Scott & Son, 133 Texas 293, 127 S. W. (2d) 447, and Travelers Ins. Co. v. Rowley, 133 Texas 372, 128 S. W. (2d) 20, were rendered. Under those decisions, debtors are not entitled to credits upon the principal note held by Connecticut General Life Ins. Co., and consequently we answer said question Yes.

■ Question No. 4 is as follows:

"Does the provision that the debt shall bear interest at the rate of ten per cent per annum after maturity, when construed in connection with the tax clause and the provision for acceleration of maturity in certain contingencies, render the contract usurious?"

As we understand, the purpose of this question is to meet the proposition of appellants as follows:

"Since the principal note for $7500.00 bears interest after maturity at the rate of ten per cent, whether such maturity results from lapse of time or by acceleration of maturity under the provisions of the contract, and since the note after maturity is a credit subject to taxation as provided by the provisions of Article 7174 of the Revised Civil Statutes of the State of Texas, and the tax clause in the contract obligates the mortgagors to pay such tax, at the rate fixed by the governing authorities, as may be assessed against the notes in the State of Texas on the

basis of the full value of the sum payable, the contract is usurious."

To this question we answer No. If the indebtedness be accelerated under provisions of the contract, then it is expressly provided that the amount collectable is, "the whole indebtedness and all sums secured by this mortgage, to wit, the principal and interest then accrued on said bonds." Under numerous decisions this constitutes a saving clause against usury. The other provision that the bond shall bear 10 per cent interest after "maturity" obviously means that it is to bear such rate after the due date of the bond. It is our opinion that this provision in the principal note or bond, when it comes into operation by virtue of the maturity of the obligation, is to be given the effect of supplanting or superseding all other interest provisions of the entire contract. As the requirement for payment of taxes upon the bond is considered as an interest provision (otherwise there would not be usury by reason thereof), it is but a fair and reasonable construction to conclude that such provision would also be superseded when the provision for 10 per cent upon the indebtedness, after maturity, became operative. Such construction being a reasonable one in light of all the provisions of the contract, it is the duty of the court to give its effect in order to save the agreement from the imputation of usury.

Opinion adopted by the Supreme Court February 21, 1940.

Rehearing overruled March 27, 1940.