**JOHN HANCOCK MUT. LIFE INS. CO. v.
DAVIS et al.**

No. 2411.

Court of Civil Appeals of Texas. Waco.

May 21, 1942.

Rehearing Denied July 2, 1942.

Geo. A. Titterington and Spafford & Spafford, all of Dallas, for appellant.

Fitzpatrick & Dunnam, of Waco, for appellees.

RICE, Chief Justice.

Elizabeth M. Davis, a widow, and another, brought this suit against John Hancock Mutual Life Insurance Company, alleging as a basis of recovery, that two promissory notes payable to defendant were tainted with usury. One note was for the principal sum of $2,500, was dated January 18, 1924, and bore annual interest at the rate of 6½ per cent per annum; the other was for the principal sum of $2,000, was dated January 28, 1927, and bore interest at 6 per cent per annum. Each note was secured by a deed of trust of even date, and each deed of trust contained the following provision: "that we will, and our heirs, executors and administrators shall pay all taxes and assessments now due or which may become due on said premises or chargeable against said note before the same shall become delinquent."

Plaintiffs alleged that defendant, although a foreign corporation, had a permit to do business in Texas, and it was contemplated that defendant might establish a situs for taxation of said notes in the City of Waco, McLennan County, Texas, in which event the same would have been subject to taxation, on the amount of the sum so payable, by the City of Waco, the County of McLennan, and the State of Texas, and the makers of said notes would then be obligated, by reason of the above quoted provisions of said deeds of trust, to pay such tax as additional interest for the use of the money loaned; and that in such event the combined tax rate lawfully fixed by the City of Waco, the County of McLennan, and State of Texas, for each of the applicable years, when applied to an assessment of said notes for taxation at the full value of the sum payable as stipulated in said notes, as required by Article 7174, Revised Statutes, would require plaintiffs to pay an amount of money for taxes, which, when added to the interest rate provided in said notes, respectively, would exceed 10 per cent per annum on the amount of money loaned by defendant. It is not contended that plaintiffs ever paid more than 10 per cent interest; but rather that the loans, because of the tax provisions above quoted, were each potentially usurious. The notes in question were never rendered or assessed for taxes in the State of Texas.

Defendant pleaded and proved that the notes were, immediately after their execution, forwarded to the home office of the defendant in Boston, Massachusetts, where they remained until sent to Dallas, Texas, for the purpose of collection and suit; that each of the notes was payable in Dallas, and that the principal and only office of the defendant in Texas was in Dallas, Texas, during all the time the loans were in force.

The jury, in answer to special issues submitted, found that the basis for taxation for the State of Texas, County of McLennan and City of Waco, of the two notes in question for the years 1923, 1924, and years since that time, would have been 100 per cent of the face amount of said notes if they had been assessed.

On the findings of the jury, the trial court held the notes to be usurious, applied all sums paid on said notes by way of interest as payments on the principal thereof, and rendered judgment in favor of defendant for the remainder of the principal due after the application of such credits, without attorney's fees, and for foreclosure. From this judgment defendant has appealed.

Appellant's first proposition that "taxes must be equal and uniform" is based upon

ten assignments of error, wherein it is urged that the trial court committed reversible error in: (1) Overruling its request for peremptory instruction; (2) in submitting each of the special issues to the jury because there was no evidence in the record of a basis of assessment, and there were no fact issues for the jury to determine; and because the undisputed evidence was to the effect that the basis for assessment of all property in McLennan County for each of the years the loans were in force was as a matter of law limited to 60 per cent of the market value of such property for each of such years; (3) in not granting appellant's motion for judgment non obstante veredicto.

These assignments necessitate a statement of the evidence introduced as to the assessment basis and rate of taxation for the City of Waco, County of McLennan and State of Texas for each of the years in question.

The Assessor and Collector of taxes for McLennan County and the Collector and Assessor of Taxes for the City of Waco each testified as to the tax rates levied by the political subdivision he represented for each of the years in question, and stated same to be as shown in the schedule below. Said official of the City of Waco testified that the percentage of value of property generally in Waco, taken as the assessed value thereof, was 66 per cent between the years 1921 to 1926; 75 per cent between 1927 and 1931; and 100 per cent between 1932 and date of trial. These percentages are also shown in the schedule:

#### Schedule

| Year | State Rate | County Rate | City Rate | City Assessment Basis |
|------|-----------|-------------|-----------|-----------------------|
| 1923 | $0.75 | $0.60 | $2.32 | 66% |
| 1924 | .75 | .60 | 2.32 | 66% |
| 1925 | .77 | .56 | 2.29 | 66% |
| 1926 | .65 | .61 | 2.33 | 66% |
| 1927 | .67 | .59 | 2.33 | 75% |
| 1928 | .64 | .59 | 2.40 | 75% |
| 1929 | .68 | .59 | 2.47 | 75% |
| 1930 | .69 | .97 | 2.44 | 75% |
| 1931 | .74 | .96 | 2.41 | 75% |
| 1932 | .69 | .72 | 2.41 | 100% |
| 1933 | .77 | .69 | 2.40 | 100% |
| 1934 | .77 | .64 | 2.40 | 100% |
| 1935 | .62 | .65 | 2.36 | 100% |
| 1936 | .62 | .65 | 2.50 | 100% |
| 1937 | .49 | .65 | 2.45 | 100% |
| 1938 | .49 | .65 | 2.45 | 100% |
| 1939 | .77 | .63 | 2.45 | 100% |
| 1940 | .69 | .56 | | |

Applying the data shown in the foregoing schedule to the note for $2,500, which bore 6½ per cent interest, it is apparent that if the basis of assessment for the State and County for each of the years involved was 60 per cent of the value of all property assessed for taxes, then the total amount (expressed in percentage of the principal of the note) which the makers of said note could have been required to pay in any one year, for City, County and State taxes on said note and for interest, would have ranged from .08856 per cent in 1923 to .09790 per cent in 1939, which amount, in any one year, would not have exceeded the maximum legal rate of 10 per cent. It follows then that the total of interest and taxes in any one year which the makers of the remaining note bearing 6 per cent interest, under the same application, could have been required to pay would not have exceeded said maximum. However, if, as appellees assert should be done, we substitute as the basis of the assessment used by the State and County 100 per cent of the value of the property assessed, or a basis substantially in excess of 60 per cent thereof, then it is readily apparent that the result would be that the makers of said notes could, in taxes and in interest specified in the notes, be required to pay, in some of the years in question, in excess of 10 per cent of the loan.

This brings us to a consideration of the evidence as to the basis of assessment of property generally for taxes adopted by McLennan County for the years involved; that is, the percentage of value applied to property generally to determine the amount in value at which property was assessed during each of said years by the taxing authorities for the State and County.

The Assessor and Collector of Taxes for McLennan County, then in office, was called as a witness by appellees and on direct examination testified that he was then serving his third term in said office; that for a period of nineteen years he had worked either in or in connection with said office; that for the last ten or twelve years he knew the basis of assessment of notes and money for state and county purposes; that for money it was 100 per cent; that if a man "rendered notes to the amount of $1000.00, he was assessed on the basis of that, 100 per cent"; that for the same period of time the basis of assessment of real estate in the county had been at "what we believed it would sell for, which, in most instances, is governed by what you

would get for a piece of property at forced sale."

However, on cross-examination it was developed from this witness, in our opinion, that, except as to money, bonds, and notes, which were assessed at 100 per cent of their value; and except as to mules, which were assessed at $40 per head without regard to the value of the mule being assessed; and except as to automobiles, which were assessed at the value shown in the "Blue Book" for the particular make and year of the car being assessed, for the period of time in reference to which he testified, property generally in McLennan County was assessed for taxes for state and county purposes at 60 per cent of its value; that very few notes were assessed. This, we think, is a fair statement of the force and effect of his testimony. This witness testified, over appellant's objection, as to original rendition sheets selected at random from his office over the period of time in question, that the value of the property listed in each sheet by the taxpayer was, if not changed by the commissioners' court, accepted and the taxpayer was then taxed on 100 per cent of the value so shown. He further testified that as to the values thus shown by the taxpayer, he could not from personal knowledge testify that such values were the true value of the property, or the market value, or a percentage of the true market value.

Over appellant's objection, a Waco attorney testified that since 1923 he had rendered for taxation the property of his father's estate situate in McLennan county, and that such property had been assessed by the City of Waco, McLennan County, and State of Texas, for tax purposes at 100 per cent or better of its value; that in rendering the property for taxation he rendered it at 100 per cent; that the assessment so made by him was raised in value by the taxing authorities.

The foregoing comprises a summary of all the evidence in the record as to the basis of assessment of property in McLennan County for state and county tax purposes during the period of time in question.

■ The rule of law by which the sufficiency of the testimony above set forth is to be determined is laid down in the case of Robertson v. Connecticut General Life Ins. Co., 134 Tex. 588, 137 S.W.2d 760, 765, and is: "In order to show that [the contract under attack] contained potentialities which would make it usurious, certainly it was incumbent on debtors to prove facts showing that under its terms the interest rate, by reason of tax levies, would at some time during the contractual life of the bond exceed 10 per cent." The court further said: "Without laying down any definite rule in this respect, we will say that, in our opinion, the burden would be upon the debtors to prove that under prevailing standards of valuation fixed from year to year, and under prevailing rate or rates fixed from year to year, the taxes which might be levied against the bond, when added to the interest contracted for, would cause the amount exacted to exceed the legal rate of 10 per cent per annum upon the amount of the bond unpaid. If and when this fact be established then the contract is to be regarded as usurious from beginning; but until such fact be established it cannot be said as a matter of law that the contract was usurious."

■ Have the appellees discharged the legal burden cast upon them, and by the evidence above summarized shown that under prevailing standards of valuation fixed from year to year, the assessed value of the notes in question would be of such an amount that when there was applied thereto the prevailing rates of tax fixed from year to year, there would be produced a tax charge of such amount that, when added to the interest contracted for, would cause the amount which could be exacted from the makers of said notes, in any one or more years of the contract period, to exceed the legal maximum rate of ten per cent per annum on the unpaid portion of the note or notes in question? Necessarily "the prevailing standards of valuation" referred to above must be valid standards, so adopted and so applied that they do no violence to statutory enactment or the plain and express injunctions of our Constitution. If the evidence introduced was sufficient to show that by valid prevailing standards of valuation fixed from year to year by the taxing authorities of McLennan County, the notes in question, if assessed for taxes for state and county purposes, could have been legally assessed on a basis of 100 per cent of their face value, then appellees have discharged their burden. On the other hand, if the evidence reveals that said notes, during the period of time in question, could have been validly assessed for state and county purposes only at the proportion or percentage of

their value (60 per cent) at which property generally was assessed during said period, then appellees' case fails.

■ In attempting to ascertain the correct solution of this proposition, we are not aided by the answers of the jury to the issues submitted, because we are of the opinion that, under the facts in this case, the valid basis of assessment of the notes for taxation during the period of time inquired about is to be arrived at by the court by applying the applicable rules of law to the undisputed evidence as revealed by the record before us, and is not to be determined by the jury's opinion as to the basis of valuation that the taxing authorities would have adopted in assessing said notes if the same had been rendered for state and county taxes; especially so, if the record reveals that the basis which the jury found would be used and applied is prohibited by the generic law of this state.

The undisputed evidence in this record reveals, we think, that during the period of time with which we are concerned, property generally in McLennan County was assessed, for state and county purposes, on a basis of 60 per cent of its value. That as to money, bonds, and as to such few notes as were rendered for taxes during said period, the basis of assessment was 100 per cent of the face value; that mules, without regard to actual value, were assessed at $40 per mule; and automobiles at their value as revealed by the "Blue Book."

■ Applying the applicable rule of law hereinabove set forth to the undisputed facts revealed by this record, we are of the opinion that it must be held that appellees did not meet the burden imposed upon them, in that they did not by legal evidence establish that under valid, prevailing standards of valuation fixed from year to year during any one or more years of the period of time under consideration, the notes in question could have been legally assessed by the taxing authorities of McLennan County for state and county purposes at 100 per cent of their face value, or on a basis substantially higher than 60 per cent of such face value. To hold otherwise would be equivalent to a judicial determination that while property generally was accepted for assessment in McLennan County, for state and county taxation, at 60 per cent of its value, notes, money, and bonds were legally assessed for the same purposes, by the same officer, at 100 per cent of their value. Such a standard of valuation arbitrarily adopted for the assessment of notes, bonds and money, is so lacking in equality and uniformity that it violates the spirit and meaning of that part of Article 8, Section 1 of the Constitution of this State, Vernon's Ann. St., reading as follows: "All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

Our Supreme Court, in the leading case of Lively v. Missouri, K. & T. R. Co. of Texas, 102 Tex. 545, 120 S.W. 852, 856, has said that the rule announced by the above quoted provision of our Constitution is "equality and uniformity." In respect to said provision, the Supreme Court further said: "If it means full market value when applied to the intangible assets of a railroad company, it means the same thing when applied to land, horses, etc. The standard of uniformity prescribed by the Constitution being the value of the property, taxation cannot be in the same proportion to the value of the property, unless the value of all property is ascertained by the same standard. The value of the intangible assets of appellee being fixed at their full value, and the value of all other property in Dallas county being assessed at 66⅔ per cent of its value, appellee was denied the right of equal and uniform taxation secured to it by the Constitution of the state."

■ Appellant contends that appellees failed to prove the value of the notes in question, and hence failed in this respect to discharge their burden. We overrule this assignment. The notes were introduced in evidence. Appellant's general loan agent testified that each of the loans when made represented fifty per cent of the value of the land securing the same. There was evidence that the value of the security had depreciated, because of the depression and the then condition of the land and buildings, to $50.00 per acre at the time of the trial. However, it was not shown when the depreciation in value began nor in what year it had progressed to the point where the security was not equal in value to the amount of the indebtedness.

■ Appellant assigns as error the action of the trial court in refusing to render judgment in its favor for the ten per cent attorney's fees stipulated in said notes. There was no evidence introduced that ap-

pellant had agreed that its attorney should have or be paid the attorney's fees stipulated in the notes sued on. The notes and the deeds of trust securing the same were introduced in evidence; and each provides for the collection of 10 per cent attorney's fees. The evidence shows, without dispute, that the notes had been, by appellant, for collection purposes, placed in the hands of the attorney who brought this suit. Appellant, through its attorneys, filed a cross-action herein seeking recovery of all its indebtedness as evidenced by said notes, as well as for foreclosure of its lien on the land securing the indebtedness. It was therein alleged that attorney's fees were due, as specified in said notes, and recovery thereof was sought. We are of the opinion that appellant was entitled to recover its attorney's fees as stipulated in said notes, and that the trial court was in error in denying it judgment for the amount thereof. Bonnell v. Prince, 11 Tex.Civ.App. 399, 32 S.W. 855, writ denied 89 Tex. 104, 33 S.W. 852.

■ Appellant has assigned error to the action of the trial court in admitting in evidence, over its objection, the testimony hereinabove set out of a Waco attorney that real property owned by his father's estate had been by him rendered for taxes and assessed by the City of Waco, County of McLennan and State of Texas for 100 per cent or better of its value. In our opinion, this assignment should be sustained. Such evidence of an isolated transaction was inadmissible for the purpose of establishing the prevailing standard of valuation fixed by the taxing authorities from year to year as a basis for the rendition of property generally for taxes in McLennan County.

■ Original tax rendition sheets of property taxpayers in McLennan County, taken at random from the office of the Assessor and Collector, showing the value of property rendered therein by various taxpayers for assessment for state and county taxes, were introduced in evidence, and the County Assessor and Collector was permitted to testify that the taxpayers were assessed at 100 per cent of the values shown on such rendition sheets unless changed by the Commissioners' Court. This was done over appellant's objection and it assigns error because thereof. We fail to see the materiality of this line of testimony. It would necessarily follow, as a matter of law, we think, that a taxpayer's property would be assessed on the full value at which the same is rendered. The question at issue was the basis of the assessment of property, the prevailing standards of valuation thereof for tax purposes from year to year; that is, whether property generally in McLennan County was rendered at and assessed on the full value thereof, or on a percentage of such value. In our opinion, the evidence above complained of was erroneously admitted.

■ We overrule appellant's assignments of error numbered 1, 8, 30, 31, 32, 37, 38 and 39, bottomed on the proposition that notes and other personal property are legally taxable only at the domicile of the owner. This is a correct statement of an abstract proposition of law; but we fail to see how the same is here involved. The notes have never been taxed in the State of Texas, and no attempt is shown to have been made to tax the same. The owner of the notes, at its option, could establish a situs for taxation of the notes in Waco, McLennan County, in which event the makers of the notes, by reason of the above quoted provisions of said deeds of trust, would be obligated to pay the taxes assessed against the same. Robertson v. Connecticut General Life Ins. Co., 134 Tex. 588, 137 S.W.2d 760.

■ We overrule appellant's assignments of error numbered 8, 24, 32 and 42, based on the proposition that Mrs. Elizabeth M. Davis, as a matter of law, is estopped to plead usury because, in a deed to her, she assumed the payment of one of the notes sued on. This contention is based on the consideration recited in a deed from J. Douglas Davis, conveying to Mrs. Davis, his mother, a tract of land securing one of the notes in controversy, as follows: "In consideration of the love and affection I bear my mother, Mrs. Elizabeth M. Davis, and in the further consideration that grantee herein assume and agree to pay the balance due and owing on that certain indebtedness owned and held by the John Hancock Mutual Life Insurance Company, and secured by a deed of trust lien on the herein below described property." It will be noted that Mrs. Davis assumed and agreed to pay "the balance due and owing" on the note referred to; she did not assume the payment of the note, or any specified part thereof. We think the language used in the consideration clause is capable of the construction that grantee assumed the balance legally due on said note and that this construction was given it by the

trial court. The only other consideration recited in said deed was love and affection. No part of the purchase price was shown to have been abated by reason of the assumption. The foregoing facts were, we think, insufficient to create an estoppel as a matter of law. National Loan & Inv. Co. of Detroit v. Stone, Tex.Civ.App., 46 S.W. 67; Maloney v. Eaheart, 81 Tex. 281, 16 S.W. 1030; Johnson v. Lasker Real Estate Ass'n, 2 Tex.Civ.App. 494, 21 S.W. 961; Clark v. Scott, Tex.Civ.App., 212 S.W. 728.

The judgment of the trial court in so far as it finds that the notes here involved are tainted with usury, and credits the principal of said notes with all payments made thereon by way of interest, is reversed, and judgment is here rendered for the Insurance Company and against Mrs. Elizabeth M. Davis, in her capacity as Independent Executrix of the estate of A. S. Davis, deceased, for the amount of its debt, principal, interest, and attorney's fees, as evidenced by the note for $2,500 sued on; and judgment is likewise rendered in favor of said Insurance Company against Mrs. Elizabeth M. Davis, a feme sole, and Hugh Davis, jointly and severally, for the amount of its debt, principal, interest, and attorney's fees, as evidenced by the note for $2,000 sued on; the judgment of the trial court in favor of the Insurance Company and against the cross-defendants therein named foreclosing the deed of trust liens on the tracts of land therein described, is affirmed, except as modified by this judgment in respect to the amount of recovery.