W. H. MOSER, Appellant,

v.

JOHN F. BUCKNER & SONS, Appellee.

No. 3334.

Court of Civil Appeals of Texas.

Waco.

July 2, 1956.

Rehearing Denied July 26, 1956.

B. Ray Smith, Frank Wear, Paris, Jack C. Altaras, Cleburne, for appellant.

Hardy Moore, Paris, James & Mahanay, Wm. Roy Anderson, Cleburne, for appellee.

TIREY, Justice.

Appellant grounded his cause of action against appellees on usury. At the conclusion of the evidence the court overruled all motions for peremptory instruction and submitted the cause to the jury. The jury in its award found substantially (1 and 2) that the amounts of $471.81, $186.09, $652.05, $605.06, $1,622.07, $128.61, $77.85 and $1,203.32 were not paid by Moser to the appellees as interest; (5 and 6) that in October 1953 plaintiff and defendants entered into an agreement whereby defendants agreed to advance to plaintiff such amounts of money as would be necessary to pay all payrolls and materials to be used in performing work on a stockpile of gravel 1.5 miles north of Paris, and that the parties further agreed that plaintiff would repay such money as would be advanced by defendants and an additional sum of $758 for such advancements as shown in plaintiff's exhibit No. 153, but further found that the sum of $758 was not paid to defendants by plaintiff as interest; (10, 11 and 12) that in October 1953 plaintiff and defendants entered into an agreement whereby defendants agreed to advance to plaintiff such amounts of money as would be necessary to pay all payrolls and materials to be used in performing work on stockpile known as Cooper stockpile and agreed that plaintiff would repay such money as would be advanced by defendants and an additional sum of $990.40 for such advancements, but further found that the sum of $990.40 referred to was paid but that it was not paid as interest; (16) that the amounts of $1,979.18 and $1,296 set out in plaintiff's exhibits Nos. 155 and 156 were not paid by the plaintiff as interest; (20) that defendants in December 1953 did not advance to plaintiff on the Red River County stockpile $1,973.89; (26) that defendants did not advance to plaintiff in February 1954 the sum of $4,526.08 on the Paris stockpile; (32, 33 and 34) that defendants between the dates of June 8, 1953 and February 28, 1954 advanced to plaintiff on the Red River County farm to market road $39,411.44, and further found that plaintiff, between the dates of July 10, 1953 and January 10, 1954, repaid such advancements and in addition thereto the sum of $3,554.31; but further found that the sum of $3,554.31 was not paid by the plaintiff to the defendants as interest; (38) that prior to the execution of the written contract of December 1953, defendants or Frank Ashburn stated to or in the presence of W. H. Moser that defendants would not pay off any labor or hauling charges on the four jobs mentioned in such contract unless plaintiff signed the same, and (39) further that W. H. Moser was not under duress when he signed said contract of December 1953, and (40) that prior to the execution of the contract of December 1953 Moser represented to defendants that the checks outstanding on the four jobs mentioned in said contract for payrolls and truck hire were as shown by check stubs and vouchers left by plaintiff with defend-

ants early in the month of December, and (41) further found that such representations on the part of plaintiff to defendants were relied upon by defendants in entering into said contract; (42) and further found that said representations by the plaintiff to the defendants were false; and (43) further found that the defendants would not have entered into the contract of December 1953 but for said representations; (44) that the advancements and any additional sums to be repaid by the plaintiff to the defendants on the State contracts mentioned in Special Issues Nos. 1, 5, 10, 20, 26 and 32 were agreed by the plaintiff and defendants to be repaid when the work was completed and the State of Texas had paid the contract sum to the party who had the contract with the State; (45) that the advancements and any additional sums to be repaid by plaintiff to defendants on the State contract mentioned in Issue No. 16, being the Howard Bros. contracts, were agreed between plaintiff and defendants to be repaid when the work had been completed and Howard Bros. had paid plaintiff the contract price for such work. The court overruled plaintiff's motion for judgment non obstante veredicto and granted defendants' motion for judgment and in the decree we find this recital: "It appearing to the Court that said verdict is a complete verdict favorable to the defendants * * * it is therefore * * * ordered, adjudged and decreed by the court that the plaintiff, W. H. Moser, take nothing of the defendants (naming them)"; and taxed the costs against plaintiff. Plaintiff seasonably perfected his appeal to this court and has assailed the judgment on what he designates as eight points. They are to the effect (1) that the evidence tendered established as a matter of law that the loan transaction represented by plaintiff's exhibits 10, 11, 12, 13, 14, 15, 16, 17, 18, 20, 21 and 24 were usurious; (2) the court erred in failing to hold as a matter of law that $471.80, $186.09, $652.05, $205.06, $1,622.07, $128.61, $77.85 and $1,203.32 were paid by plaintiff to defendants as interest and that they were usurious; (3) in failing to hold that the amount of $758 paid by plaintiff to defendants was interest and that it was usurious; (4) in failing to hold that the amount of $990.40 paid by plaintiff to defendants was interest and that it was usurious; (5) in failing to hold that the amount of $1,979.18 and $1,296 paid by plaintiff to defendants was interest and that it was usurious; (6) in failing to hold that the amount of $3,554.31 paid by plaintiff to defendants was interest and that it was usurious; (7) complains of the court's failure to submit certain questions in special issues; (8) the error of the court in permitting defendants' witnesses to testify as to the status of the accounts and transactions between the parties over the objection that the books and records of the accounts between the parties was the best evidence.

Perhaps a short statement will be helpful to this voluminous record. Plaintiff in the cause was for the most part cast as a subcontractor and the defendants as original contractor in various types of highway construction. Plaintiff went to trial on his second amended original petition which contained approximately 19 pages and 25 separate exhibits attached thereto, covering approximately 40 additional pages. Plaintiff and defendants had been operating for many years on what was generally the basis of defendants being the original contractor and plaintiff the subcontractor and this pleading purports to cover their transactions during the last two years of their operations. The plaintiff's pleadings on which he went to trial are voluminous and the details in the exhibits are likewise voluminous and to some extent involved. Since appellant's cause of action was and is grounded upon various alleged usurious contracts, we must examine the record here with the following cardinal rules in mind:

(1) "The contract not showing usury on its face, the question of whether

or not the transaction was intended as an evasion of the law on usury was one for the jury. Andrews v. Hoxie, 5 Tex. 171; Mitchell v. Napier, 22 Tex. 120; Sheffield v. Gordon, 34 Tex. 530; Galveston & H. Investment Co. v. Grymes, Tex.Civ.App., 50 S.W. 467; Cotton v. Cooper, Tex.Civ. App., 160 S.W. 597. Unlawful intent, essential.—It is of the essence of an usurious transaction that there should have been an unlawful and corrupt intent on the part of the lender to violate the law. The question of intent may be one of law but is usually for the jury to determine from the stipulations of the contract, the attendant circumstances and subsequent acts of the parties; such as the situation and object of the parties at the time of the loan, the character of the funds and use to be made of them, the time, place and manner of repayment. Whether the question of intent be of law or fact, depends exclusively upon whether usury appears upon the face of the transaction * * * Where, indeed, the contract, upon its very face, imports usury, as by an express reservation of more than legal interest, there is no room for presumption, for the intent is apparent; res ipsa loquitur. But where the contract on its face is for legal interest only, it must be proved, that there was some corrupt agreement, or device or shift to cover usury; and that it was in full contemplation of the parties. Webb on Usury, pp. 33–34, sec. 33." See Orr v. McDaniel, Tex.Civ.App., 30 S.W.2d 487, reversed on other grounds, Tex.Com.App., 30 S.W.2d 489; Walker v. Temple Trust Co., Tex. Com.App., 124 Tex. 575, 80 S.W.2d 935; 66 C.J. p. 173; 91 C.J.S., Usury, § 48, p. 633; Robertson v. Connecticut General Life Ins. Co., Tex.Com.App., 134 Tex. 588, 137 S.W.2d 760; Nevels v. Harris, 129 Tex. 190, 102 S.W.2d 1046, 109 A.L.R. 1464.

■ (2) As a reviewing court, it is our duty to consider the evidence and the inferences properly to be drawn therefrom in the light most favorable to the party obtaining the verdict, and it is our duty in considering controverted issues of fact to accept as true that testimony which tends to support the verdict. 3–B Tex.Jur. pp. 370 and 372. Moreover "'Where the facts are controverted, or are such that different inferences may be reasonably drawn therefrom, an issue of fact is raised; it is only where the evidence is harmonious and consistent, and the circumstances permit of but one conclusion, that the question becomes one of law for the determination of the court. An issue of fact is raised 'if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff.'" Olds v. Traylor, Tex. Civ.App., 180 S.W.2d 511, 514, points 8 and 9 (writ ref.).

■ (3) Moreover, " 'It was the jury's province to weigh all of the evidence, to decide what credence should be given to the whole or to any part of the testimony of each witness. "The jury were the judges not only of the facts proved, but of the inferences to be drawn therefrom, provided such inferences were not unreasonable." ' " See Point 6, Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, at page 199.

■ (4) Finally, no rule is better settled than the one to the effect that if there is evidence of probative value to sustain the findings of the jury, the appellate court is bound by such findings. See Lynch v. McClendon, Tex.Civ.App., 283 S.W.2d 88, point 3 (no writ history) and cases there collated.

Going back to the contracts attached to the plaintiff's pleadings on which he grounded his cause of action for usurious interest, we have carefully considered each of these contracts and we find nothing in the contracts to indicate that they were drawn for the purpose of violating our usury statutes, (See arts. 5069, 5070, 5071

and 5073, V.A.C.S.) Nor do we find anything in this voluminous record that shows as a matter of law that the defendants were guilty of exacting usurious interest from the plaintiff in the execution and carrying out of the contracts relied upon by plaintiff.

■ We think we should say that all of the testimony tendered in this case is to the effect that appellees were not in the business of lending money; they were engaged in the building of roads, mostly State highway contracts, and it was in connection with these contracts that plaintiff claims he was injured by the payment of usurious interest. We see nothing in the contracts or in the testimony to substantiate plaintiff's theory of the case that appellees subcontracted certain road jobs to the plaintiff for the purpose of lending him their money, but on the contrary the evidence shows without dispute that appellees had in mind only the completion of the contracts that they had obligated themselves to perform for the State. Nor do we think that there is any testimony in the record to substantiate the plaintiff's view that when plaintiff entered into the subcontracts here referred to with appellees he did so on the basis of estimating or calculating the rate of interest he would pay to appellees for such sums of money that they may advance to him while he was engaged in the performance of his subcontracts; but on the contrary we think the evidence substantiates the jury's belief that appellant entered into the subcontract with the idea that he could make a profit on the job by completing the work specified in the subcontract for the amount stated in appellees' contract, less a certain percent. Needless to say that the original contractor remained primarily liable for the completion of the contract and it is true that the State advanced money to the original contractor on the work done each month less the amount that the contract authorized the State to retain to secure the completion of the contract, so the fact that appellees may have advanced money to the subcontractor from time to time while he was engaged in the completion of the work he was obligated to perform does not necessarily prove that appellees were engaged in the money lending business because the State paid the money for the performance of the contract to the original contractor and the subcontractor's money came directly from the original contractor after the original contractor received his money from the State. We think that it is obvious under all of the testimony tendered that the motive of the original contractor, as that of the subcontractor, on these jobs was profit and the original contractor believed that it could make a profit by subletting it to the appellant for the price stated and the subcontractor believed that he could make a profit by performing the contract for the price he agreed to do the work. We think the evidence is sufficient to sustain the jury's findings that payments made under these contracts were not made and received with the idea of interest but solely for a profit. The time element would not be controlling, as time is computed in the payment of interest for the use and detention of money; because, if for any reason the performance of the contract was delayed or if the contractor failed in his ability to do and perform the work according to the plans and specifications, or if the work cost more than the contractor estimated it to cost, and he found himself unable to complete the performance of the contract, the party advancing the money for the payroll had the additional hazard of being required to be able to take up and fully perform the contract, to the complete satisfaction of the State of Texas before the money would be paid. The completion of each of these contracts had the potential of being long drawn-out, in case the party performing the contract failed in his duty. Under the record as a whole and the foregoing conditions, we think the jury had the right to believe and find that the contracts were not tainted with usury. The testimony tendered in this case, including exhibits, consists of three volumes and contains 1124 pages. Needless to say, we cannot detail it nor do

we think it would be of any precedential value. The jury had an opportunity to see and hear the witnesses and examine the exhibits and we think the evidence is of sufficient probative force to sustain each of the findings of the jury. We have carefully examined each of appellant's Points 1 through 7, and we find that none presents reversible error and each is overruled.

We now return to consider appellant's Point 8. It is: "The Trial Court erred in permitting defendants to, over plaintiff's repeated objections, testify as to the status of the accounts and transactions by and between the parties, instead of revealing the evidence thereof from their books and records." We have considered most carefully all of the testimony tendered under this assignment and do not believe that it presents reversible error. Our view of the testimony tendered is that it threw no light whatsoever on whether or not the transaction between the appellant and appellees was or was not usurious. If plaintiff had been suing to establish a debt owing to him by appellees, this point would present a different situation, but here his sole action is for debt because of the payment of usurious interest. For example, one of the questions and answers complained of is: "Q. If you don't mind I would like to see if this will refresh your memory; out of the $92,000.00 or the $96,000.00, isn't it a fact that John F. Buckner & Sons has only paid W. H. Moser $2506.20? A. No, sir, that is not correct. Q. Will you give it to us from your books, please sir, so we can have the benefit of the original records? A. This was taken from the books." Being of the view that the testimony complained of threw no light on the issue as to whether or not the transaction between appellant and appellees was tainted with usury, we think the testimony complained of was harmless error and brings the cause well within Rules 434 and 503, T.R.C.P. See also Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191 and cases there cited.

Finding no reversible error in this record, it is our view that the judgment of the trial court should be affirmed.

Accordingly, the judgment of the trial court is affirmed.