GREEN STATE PETROLEUM,
INC., Appellant,

v.

ARROW RIG SERVICE, INC., d/b/a Arrow Trucking Company and Lincoln Insurance Company, Appellees.

and

ARROW RIG SERVICE, INC., d/b/a Arrow Trucking Company,
Appellant,

v.

GREAT STATE PETROLEUM, INC. and Lincoln Insurance Company, Appellees.

No. 2–85–050–CV.

Court of Appeals of Texas,
Fort Worth.

April 2, 1986.

Steves, Leonard, & Jones, Sterling W. Steves, Michael L. Sampson, Fort Worth, Glandon, Erwin, Scarborough, Baker, Choate & Arnot, Frank Scarborough, John D. Hart, Abilene, for appellant.

Mike Russell, Arlington, for appellees.

Before FENDER, C.J., and HOPKINS and HUGHES (Retired, sitting by assignment), JJ.

## OPINION

HOPKINS, Justice.

This is a suit for damages to a drilling rig resulting from its derrick having been dropped while it was being transported.

We reverse and remand.

The drilling rig was owned by Great State Petroleum, Inc. (hereinafter Great State), and was damaged while it was being transported by Arrow Rig Services, Inc., d/b/a Arrow Trucking Company (hereinafter Arrow Rig). Lincoln Insurance Company (hereinafter Lincoln), Great State's insurance carrier, brought suit in Great State's name to recover its subrogated claim based upon the casualty payment to Great State. Lincoln's suit alleged causes of action in negligence, breach of contract of bailment, and sought recovery under the Texas Deceptive Trade Practices Act—Consumer Protection Act (hereinafter "D.T.P. A.", or "the Act"), TEX.BUS. & COM. CODE ANN. sec. 17.50 (Vernon Pamph.

Supp.1986). Lincoln later added a claim against Great State for indemnity and mutual mistake in the settlement of the insurance claim for damages to the rig in question. Additionally, Arrow Rig filed a counterclaim seeking recovery from Great State for monies due, plus attorney's fees, for other unrelated trucking services rendered by Arrow Rig to Great State.

The case was submitted to the jury upon special issues. The jury found that Great State should recover total actual damages of $50,414.18 from Arrow Rig ($33,235.84 for repair of the derrick, $12,500.00 for down time so as to repair the derrick, and $4,678.34 for damage to the rotary hose). Additionally, the parties stipulated that Great State owed Arrow Rig $51,427.46 on Arrow Rig's counterclaim regarding its suit on account (minus $6,887.49 if a specified invoice was found to have been improperly charged to the account of Great State), and that Lincoln had paid Great State $44,581.18 on its insurance claim relating to this accident. The jury also found that $28,400.00 would compensate Great State's attorneys as fees for their preparation and trial of this cause, but in response to the questions inquiring about the amount of attorney's fees at the appellate level, the jury answered "-0-". Lastly, the jury found that Lincoln's payment to Great State was based upon mutual mistake on the part of both of those parties, and the extent of the overpayment was $9,167.00.

In its judgment, the trial court specifically stated that Great State was a consumer under the D.T.P.A., but that inasmuch as no net recovery was had by Great State, the court was not going to allow the doubling factor provided for by the D.T.P.A.; however, the court did award Great State attorney's fees from Arrow Rig under the Act. The court's judgment further allowed Lincoln recovery from Arrow Rig in the sum of $27,386.72 for damages to the rig, and awarded Lincoln a recovery against Great State in the sum of $17,194.46, plus pre-judgment interest. Costs were taxed against both Great State and Arrow Rig, both of whom have appealed portions of the trial court's judgment.

We initially note that although the judgment makes no specific award of attorney's fees, a careful mathematical computation of the total damages awarded by the jury and those which the court found were agreed to by the parties, indicates that a breakdown of the damage award is as follows:

(1) GREAT STATE
    Owes:  $44,581.18 to Lincoln (subrogation)
        +   51,427.46 to Arrow Rig (on counterclaim)
           $96,008.64 Total Owed

    Recovers: $50,414.18 from Arrow Rig (actual damages)
        +      28,400.00 from Arrow Rig (attorney's fees at trial)
              $78,814.18 Total Recovery

    Net amount owed by Great State: $17,194.46 (This is the exact amount provided for in the judgment.)

(2) ARROW RIG
    Owes:  $50,414.18 to Great State (actual damages)
        +   28,400.00 to Great State (attorney's fees at trial)
           $78,814.18 Total Owed

    Recovers: $51,427.46 from Great State (on counterclaim)

    Net amount owed by Arrow Rig: $27,386.72 (This is the exact amount provided for in the judgment.)

(3) LINCOLN
    Recovers: $44,581.18 from Great State (subrogation) (This is the exact amount provided for in the judgment: $17,194.46 from Great State, and $27,386.72 from Arrow Rig.)

There does not appear to be any provision in the judgment regarding the jury's finding that Lincoln overpaid Great State in the amount of $9,167.00.

The evidence revealed that Great State contracted with Arrow Rig to transport a drilling rig owned by Great State, which was insured by Lincoln. It is undisputed that on December 16, 1981, while transporting the drilling rig in question, Arrow Rig dropped the derrick which is a part of the drilling rig, and that after the accident the derrick was damaged to the extent that it was unsafe and dangerous and could not be erected. The rotary hose was also damaged in the accident.

The evidence is conflicting with regard to both the amount which Great State would be required to expend so as to repair the damaged derrick, and the amount of time required to effectuate these repairs. Great State's expert witness testified that he evaluated the damage to the derrick almost immediately after it was damaged, and the estimated repair cost was anywhere from $40–$50,000, and would require two to three week's repair time in the shop. Arrow Rig's expert witness testified that the repair work would only cost $15,000 and could be done in the field; this repair would take two and one half to three days. This witness further stated that to rebuild the entire thirty-year-old derrick would cost $35,400 and, according to this witness, the additional cost was attributable to repairing prior damage unrelated to the accident in question; the repair work to totally rebuild the derrick would take two to two and one-half weeks.

Great State's president, Edward Blanchard, testified that Great State was losing approximately $5,000 a day for each day the derrick (and therefore the drilling rig) was not in use, and Great State might have been in jeopardy of losing its drilling contract with the lease holder if drilling had not commenced immediately after the accident. He stated that instead of repairing the derrick, Great State made a business decision and chose to acquire a new derrick for a purchase price of $81,900. The total actual drilling time lost by Great State as a result of these events was three days and five hours.

On April 12, 1982, Great State was paid $44,581.18 by its insurance company, Lincoln, in settlement of the property damage claim arising out of this incident.

Great State's points of error one, two, three, six and seven all raise alleged error regarding the trial court's special issue submission concerning Great State's damages resulting from the damage to the derrick of the drilling rig. These points are based upon Great State's claim that it had a legal obligation to make a commercially reasonable decision to mitigate its damages, and that it did so by replacing the damaged derrick, rather than attempting to repair this portion of the drilling rig. Therefore, it claims it was entitled to recover the greatest amount of actual damages—the total loss sustained as a result of the occurrence in question—and that the court's charge should have permitted the jury to determine the replacement cost of the damaged derrick. Accordingly, Great State asserts the trial court erred in the manner in which it submitted Special Issues Nos. 14 and 15, and in not submitting Great State's tendered issues which asked the jury to determine the *replacement* cost of the derrick, and the loss of use of the rig for the period of replacement of the derrick and rotary hose.

Our initial determination is whether Great State did in fact have a duty to mitigate its damages, and therefore was entitled to seek recovery of the purchase price of the derrick as actual damages.

Great State brought suit alleging several causes of action including recovery under sec. 17.50 of the Texas Deceptive Trade Practices Act which provides, in pertinent part:

(a) A consumer may maintain an action where any of the following constitute a producing cause of actual damages:

    *    *    *    *    *    *

(2) breach of an express or implied warranty;

\* \* \* \* \* \*

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of actual damages found by trier of fact ...

*Id.* Actual damages suffered under sec. 17.50(b)(1) are determined by the total loss sustained by a plaintiff as a result of the deceptive trade practice. *See Smith v. Baldwin,* 611 S.W.2d 611, 617 (Tex.1980). Although the term "actual damages" is not defined within the D.T.P.A., actual damages means those recoverable at common law. *See Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 939 (Tex.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). Therefore, the Act does not extend the scope of actual damages beyond these common law rules. *Building Concepts, Inc. v. Duncan,* 667 S.W.2d 897, 901 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

■ It logically follows that a party seeking recovery under the D.T.P.A. must comply with the obligations which would be imposed upon him by common law rules. The Supreme Court of Texas has stated the common law rule and the reasoning regarding mitigation of damages, as follows:

The plaintiff owed the duty to use ordinary care to mitigate his damages, and is entitled to recover, as damages, the amount reasonably expended in his effort so to do. [Citations omitted.] The expenses incurred in an effort to mitigate damages are not to aggravate, but to lessen, the amount for which the wrongdoer might be held liable. If the effort is successful, the defendant reaps the benefit thereof. If it turns out otherwise, it is but just that he should sustain the loss. [Citations omitted.]

*Texas & P. Ry. Co. v. Mercer,* 127 Tex. 220, 90 S.W.2d 557, 560 (1936). *See also Meadolake Foods, Inc. v. Estes,* 148 Tex. 13, 219 S.W.2d 441 (1949) (per curiam); *Fidelity and Deposit Co. of Maryland v. Stool,* 607 S.W.2d 17, 25 (Tex.Civ.App.—Tyler 1980, no writ); *LTV Aerospace Corpora-*

*tion v. Bateman,* 492 S.W.2d 703, 708–09 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r. e.).

This common law requirement to mitigate damages was addressed in the case of *Hycel, Inc. v. Wittstruck,* 690 S.W.2d 914 (Tex.App.—Waco 1985, no writ) which involved a group of physicians who operated a pathology laboratory that brought an action under the D.T.P.A. against the manufacturer/seller of an automated blood chemistry analyzer, alleging the defendant had misrepresented the machine's characteristics, resulting in a substantial loss of profits by the laboratory. The plaintiffs sought recovery for amounts subsequently expended by them to purchase two blood analyzers from other companies when the defendant's machine was unable to perform the chemical analyses which had been represented to plaintiffs. The Court held that the laboratory had a duty to mitigate the loss of profits resulting from the defendant's actionable conduct, *id.* at 924, and that reasonable and necessary expenses of mitigating an economic loss are recoverable under the D.T.P.A. as actual damages. *Id.*

■ Accordingly, we hold that Great State had a duty to mitigate its damages resulting from the damage to the derrick, and it could properly seek recovery for such reasonable and necessary sums expended in complying with this duty. We next must determine whether the trial charge properly submitted the special issues on damages.

■ As pertains to the issues of liability, the jury found: 1) Arrow Rig was negligent in dropping the drilling rig, which negligence was a proximate cause of the damage to the rig; 2) Arrow Rig's failure to return the drilling rig to Great State in the same condition in which it was received, less ordinary wear and tear, was negligence which action was a proximate cause of the damage to the rig; 3) the fall of the derrick was due to the negligence of Arrow Rig, which was a proximate cause of the damage; 4) Arrow Rig failed to perform

the service of moving the drilling derrick in a skillful and workmanlike manner, and the fall of the derrick was a producing cause of the damage; and 5) after the accident the rotary hose of the drilling rig was not susceptible of being repaired to its prior condition (with the difference in its fair market value before and after the occurrence being $4,678.34).

Additionally, the jury answered two special issues with regard to the amount of damages recoverable by Great State (all emphasis is supplied):

SPECIAL ISSUE NO. 14

What do you find to be the reasonable cost in Young County, Texas of repairs, if any, necessary to restore the derrick of the drilling rig of Great State to the condition in which it was immediately before the occurrence in question?

Answer in dollars and cents, if any.

ANSWER: $33,235.84   Explanation:

| | |
|---|---|
| $26,233.00 | Repair |
| 3,282.84 | Trucking |
| 3,720.00 | Crew Time-rig up & rig down |
| $33,235.84 | |

SPECIAL ISSUE NO. 15

What do you find to be the reasonable value of the use of a drilling rig of the same class as that owned by Great State for the period of time reasonably required to repair the damage, if any, to its derrick caused by the occurrence in question?

You are instructed that a party is required to mitigate or lessen its damages in the event of a loss. This means that a party is required and entitled to spend whatever is reasonably necessary under the circumstances in order to prevent a greater amount of damages.

Answer in dollars and cents, if any.

ANSWER: $12,500        2½ days @ $5,000.00

---

Great State requested the following special issues, all of which were refused by the trial court (all emphasis is supplied):

[Requested No. 13:]

What do you find from the preponderance of the evidence to be the reasonable and necessary cost of *repair of the drilling rig* of Great State in Young County, Texas, on December 16, 1981, immediately after it was dropped?

You are instructed that a party is required to mitigate or lessen its damages in the event of a loss. This means that a party is required and entitled to spend whatever is reasonably necessary under the circumstances in order to prevent a greater amount of damages.

Answer in dollars and cents, if any.

[Requested No. 14:]

What do you find to be the reasonable cost, if any, in Young County, Texas, to *replace the drilling derrick and rotary hose* in question?

ANSWER IN DOLLARS AND CENTS, IF ANY.

ANSWER: Derrick: $_____
              Rotary Hose: $_____

[Requested No. 15:]

What do you find to be the reasonable value of the *loss of use*, if any, *of the*

*drilling rig* of the same class as owned by Great State Petroleum, Inc. in Young County, Texas, for the period of time, if any, reasonably required to *repair* the damage, if any, to the derrick in question?

ANSWER IN DOLLARS AND CENTS, IF ANY.

[Requested No. 16:]

What do you find to be the reasonable value of the *loss of use*, if any, *of the drilling rig* of the same class as owned by Great State Petroleum, Inc. in Young County, Texas, for the period of time, if any, required to *replace the drilling derrick and rotary hose* in question?

ANSWER IN DOLLARS AND CENTS, IF ANY.

As is evident, Great State wanted the "mitigation" instruction included with its proposed special issue regarding cost of repair of the drilling *rig*. The trial court denied Great State's request, overruled its objection, and included the instruction with Special Issue No. 15 concerning the value of the loss of use of the drilling rig for the period of time required to repair the damage to the derrick. Great State contends that because the instruction was submitted along with this special issue it informed the jury that Great State was *required* to mitigate its damage (*i.e.*, purchase a new derrick so as to prevent a greater amount of damages), but it allowed no place for the jury to award recovery for the monies spent by Great State in complying with this duty.

We agree with Great State's contention and hold the trial court erred in submitting Special Issue No. 15 with the "mitigation" instruction, and in refusing to submit Great State's requested Special Issues Nos. 13 through 16. Great State's points of error one, two, three, six and seven are sustained.

Upon retrial it would be appropriate, assuming the evidence presented warrants same, for the trial court to submit a special issue asking the jury which method, replacement or repair of the derrick, they find from a preponderance of the evidence

was more reasonably necessary under the circumstances existing on December 16, 1981, so as to restore the drilling rig to its condition existing immediately prior to the accident in question. In this regard, the jury could be instructed that a party has a duty to mitigate or lessen its damages in the event of a loss, and that in determining which method was more reasonably necessary the jury may take into consideration the totality of the circumstances existing at the time in question. This determination might include any factor which is raised by the evidence, and which is relevant to the jury's consideration of this special issue pursuant to TEX.R.EVID. 401, including: the actual cost to either replace or repair the derrick in order to restore the drilling rig to the condition existing immediately prior to the accident; the projected "down time" involved with each alternative method; the salvage value (if any) of the derrick; and the possible loss of the drilling lease by Great State (and the value attached thereto). Our enumeration of these particular factors is not intended by us to be a complete all-inclusive listing; the trial court may of course, in its discretion delete or add to this listing as the evidence warrants.

Great State's points of error four and five are worded as follows:

The Trial Court erred in granting judgment against Appellant because there was factually insufficient evidence (point 4) to support the jury's answer to special issue number 15, that the damages for loss of use for the time required to repair the derrick was $12,500.00 (2½ days at $5,000) and that such a finding was against the great weight and preponderance of the evidence (point 5).

■ At first blush, it might appear that Great State is attempting to challenge the factual sufficiency of the evidence to support the jury's answer to Special Issue No. 15. However, we must analyze the wording of these points of error in light of the holding of the Supreme Court in the recent case of *Pool v. Ford Motor Co.*, 29 Tex. Sup.Ct.J. 204 (Feb. 12, 1986) (motion for

reh'g pending). In *Pool,* the appellant's point of error was worded as follows:

The trial court *erred in entering judgment* for the plaintiffs because the jury's finding, in answer to Special Issue No. 6, that Ronnie Pool was not at all negligent in speeding, having a medically tested blood-alcohol level of .119, and failing to wear his seatbelt while driving under those conditions after mignight *is so against the great weight and preponderance of the evidence as to be manifestly unjust.* [Emphasis added.]

*Id.* at 205. The Supreme Court held that this point of error did not preserve factual insufficiency of the evidence for review by the Court of Appeals. *Id.* at 206. In making this determination, the Court relied upon *Chemical Cleaning, Inc. v. Chemical Cleaning & Equipment Service, Inc.,* 462 S.W.2d 276 (Tex.1970) wherein the Court held that "a point of error which states that the trial court erred in rendering judgment on a verdict because of the state of the evidence—if it is adequate for any purpose—is only a 'no evidence' point." *Id.* at 277.

It is evident from a comparison of wording of points of error four and five in the instant case with the points of error in *Pool* and *Chemical Cleaning,* that Great State's points of error four and five do not adequately raise challenges to the factual sufficiency of the evidence, and are to be construed by us as "no evidence" points.

In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Larson v. Cook Consultants, Inc.,* 690 S.W.2d 567, 568 (Tex.1985); *International Armament Corporation v. King,* 686 S.W.2d 595, 597 (Tex.1985); *Stodghill v. Texas Employers Insurance Association,* 582 S.W.2d 102, 103 (Tex.1979); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the finding of the jury, the point

must be overruled and the finding upheld. *In re King's Estate,* 244 S.W.2d at 661–62.

■ A "no evidence" point of error must and may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Royal Indemnity Co. v. Little Joe's Catfish Inn, Inc.,* 636 S.W.2d 530, 531 (Tex.App.—San Antonio 1982, no writ); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEXAS L.REV. 361 (1960).

■ We have previously recited the testimony regarding the differing opinions of the various witnesses relating to the projected down time of the rig for the period of time necessary to repair its derrick. While the evidence is by no means overwhelming in support of the jury's answer that the reasonable value of the loss of use of the drilling rig for the period of time reasonably required to repair the damage to its derrick was two and one-half days, Arrow Rig's expert witness testified that the repair work in question would only cost $15,000.00 and could be done in the field, with a projected repair time of two and one-half to three days. Therefore, we find there was some evidence of probative force to support the finding of the jury, and we overrule points of error four and five.

■ In its eighth point of error, Great State asserts that the trial court erred in failing to award pre-judgment interest on the damages to the drilling rig. Great State further contends in point of error nine that once its entitlement to recover prejudgment interest is established, and this amount is added to $1,013.28 (which represents the difference between the actual damages suffered by Great State and the amount it owed to Arrow Rig on the

counterclaim), then sec. 17.50(b)(1) would be applied as follows:

> (b) In a suit filed under this section, each consumer who prevails may obtain: (1) the amount of actual damages found by the trier of fact. In addition the court shall award two times that portion of the actual damages that does not exceed $1,000.00.

*Id.* Of course, a party's petition must contain pleadings to support an award of pre-judgment interest, *Black Lake Pipe Line Co. v. Union Construction Co.*, 538 S.W.2d 80, 96 (Tex.1976), and pre-judgment interest may only be awarded when a party's damages are established at a definite time and the amount of damages is definitely determinable. *Exxon Corp. v. Middleton*, 613 S.W.2d 240, 252 (Tex.1981) (opinion on reh'g).

In view of our remand of this case, we need not determine whether the evidence upon retrial will establish that Great State meets the stated criteria for pre-judgment interest. Points of error eight and nine are overruled.

▪ Arrow Rig's sole point of error on appeal is that the trial court erred in awarding $28,400.00 in attorney's fees to Great State for work performed through trial, claiming that Great State did not "prevail" because it did not have a net recovery against Arrow Rig, as Arrow Rig claims is mandated by the TEX.BUS. & COM.CODE ANN. sec. 17.50(d) (Vernon Pamph.Supp.1986). This section provides that "[e]ach consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees." Although it is established that in determining whether actual damages should be doubled or trebled pursuant to sec. 17.50(b)(1), the actual damages suffered are determined by the total loss sustained *reduced* by any allowable offsets, *see Smith v. Baldwin*, 611 S.W.2d 611, 617 (Tex.1980), the same rule does not apply in determining a party's eligibility to recover attorney's fees under sec. 17.50(d) of the D.T.P.A. *See McKinley v. Drozd*, 685 S.W.2d 7, 9 (Tex.1985). In *McKinley*, the Supreme Court of Texas held that con-

sumers are allowed to recover attorney's fees incurred in the successful prosecution of a claim for damages under the Act, even though the claim might be entirely offset by a claim of an opposing party. *See also Matthews v. Candlewood Builders, Inc.*, 685 S.W.2d 649, 650 (Tex.1985) (per curiam). Accordingly, we hold that the trial court properly awarded attorney's fees to Great State for work performed through trial of this cause. Arrow Rig's point of error is overruled.

▪ Continuing on the subject of attorney's fees, Great State contends the trial court erred in granting judgment based upon the jury's answers to special issues that Great State's attorneys should receive no compensation for attorney's fees on appeal because there was either no evidence (point of error thirteen), or factually insufficient evidence (point of error fourteen), to support the jury's answers to Special Issue No. 16(b–d). In accordance with the previously discussed holding in *Pool v. Ford Motor Co.*, 29 Tex.Sup.Ct.J. 204 (Feb. 12, 1986) (motion for reh'g pending), we are constrained to construe Great State's point of error fourteen as challenging the legal sufficiency of the evidence inasmuch as it addresses the trial court's action in "granting judgment".

We have previously delineated the proper standard of review with regard to a "no evidence" point of error. Special Issue No. 16 provided as follows:

SPECIAL ISSUE NO. 16

What sum of money, if any, do you find to be reasonable attorneys' fees in relation to the work expended by attorneys for Great State Petroleum in this case as follows:

(a) For the preparation and trial of this cause.

(b) For an appeal to the Court of Appeals.

(c) For making or responding to an Application for a Writ of Error to the Supreme Court of Texas.

(d) For an appeal to the Supreme Court of Texas in the event an Application for a Writ of Error is granted. Answer in dollars and cents, if any.

ANSWER: (a) $28,400.
(b) $ -0- .
(c) $ -0- .
(d) $ -0- .

Arrow Rig merely responds that the evidence is "factually sufficient" to support the jury's answers, and that inasmuch as the credibility of the witness (Great State's attorney) was within the sole province of the jury, the jury obviously chose not to believe the witness's testimony regarding attorney's fees on appeal. In this regard, Great State's attorney testified, without any cross-examination or controverting evidence, that in his estimate a reasonable attorney's fee would be:

| $4,000.00 | For an appeal to the Court of Appeals; |
| 1,000.00 | If an application for writ of error is made to the Supreme Court of Texas; and |
| 5,000.00 | If the application for writ of error is granted. |

In support of its claim that the trial court erred in rendering judgment on the jury's verdict, Great State relies upon the case of *Doerfler v. Espensen Company,* 659 S.W.2d 929 (Tex.App.—Corpus Christi 1983, no writ). In that D.T.P.A. case, the jury found that the reasonable amount of attorney's fees was "-0-" (it is unclear from the case whether this was only regarding the attorney's fees at trial, or whether this amount also included attorney's fees on appeal). The trial court, upon proper motion under TEX.R.CIV.P. 301, disregarded the jury's answers and awarded the sum of $250.00 as reasonable attorney's fees. The appellate court impliedly held that the trial court properly disregarded the jury's answers, but that "once the jury finding was set aside, it was error for the trial judge to act as a substitute fact finder in finding $250.00 in reasonable at-

torney's fees." *Doerfler,* 659 S.W.2d at 931.

In the instant case, although the jury was not bound to accept the witness's testimony absolutely, it was not at liberty to reject it totally by finding "-0-" in answer to the questions concerning reasonable attorney's fees on appeal. *See First Texas Savings Association of Dallas v. Dicker Center, Inc.,* 631 S.W.2d 179, 188 (Tex.App.—Tyler 1982, no writ); *Elizabeth-Perkins, Inc. v. Morgan Express, Inc.,* 554 S.W.2d 216, 218–19 (Tex.Civ.App.—Dallas 1977, no writ). The only question presented to the jury with respect to attorney's fees was the reasonable value of the services in light of the circumstances; the jury was not asked whether attorney's fees should be awarded. To allow the jury's non-responsive answers of "-0-" to determine whether attorney's fees are recoverable in this case would be in contravention of the language and legislative purpose and intent of TEX.BUS & COM.CODE ANN. sec. 17.50(d).

We find the jury's answers to Special Issue No. 16(b–d) to be unsupported by any probative evidence. Thus, the trial court erred in accepting this finding and rendering judgment based upon same. Accordingly, Great State's points of error thirteen and fourteen are sustained.[1]

Generally, if we sustain a "no evidence" point, it is our duty to render judgment for the appellant because that is the judgment the trial court should have rendered. *See National Life and Accident Insurance Company v. Blagg,* 438 S.W.2d 905, 909 (Tex.1969); TEX.R.CIV.P. 434. However, this rule of procedure also provides that a cause shall be remanded for a new trial "when it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be decreed is uncertain." TEX.R.CIV.P. 434. Further, the reasonable amount of attorney's fees cannot be established as a matter of law in the case at bar because the opinion testimo-

1. We sustain point of error fourteen as interpreted by us to be a challenge to the *legal*

sufficiency of the evidence.

ny of an attorney as to the reasonable amount of attorney's fees is not conclusive. *See Trevino v. American Nat. Ins. Co.* 140 Tex. 500, 168 S.W.2d 656, 660 (1943); *Doerfler,* 659 S.W.2d at 931–32. Accordingly, in view of our remand of the case on the merits, we also remand the issue of Great State's attorney's fees on appeal.

In point of error fifteen Great State asserts the trial court erred "in assessing costs against Great State as it obtained a net recovery against Arrow Rig."[2] Presumably, Great State is arguing that this Court should sustain its point of error eight with regard to pre-judgment interest, and that Great State would then have a net recovery and would be the prevailing party, entitled to an award of court costs. We need not further address this issue in view of our reversal; however, while sec. 17.-50(d) does provide that court costs shall be awarded to the prevailing party in a D.T. P.A. action, we note that TEX.R.CIV.P. 131 and 303 provide for an award of costs for the successful party to "a suit", and to a counterclaim. Further, TEX.R.CIV.P. 141 provides that the trial court may, for good cause to be stated on the record, adjudge the costs otherwise than as provided by law or these rules. *See also Rogers v. Walmart Stores, Inc.,* 686 S.W.2d 599, 601 (Tex.1985). Therefore, upon retrial, it would again be within the trial court's discretion to assess costs within the parameters of these rules of procedure. *See Building Concepts, Inc. v. Duncan,* 667 S.W.2d 897, 905–06 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Great State's point of error fifteen is overruled.

Lastly, Great State's points of error ten through twelve all challenge the sufficiency of the evidence to support the jury's answer to Special Issue No. 20 that there was a mutual mistake on the part of Great State and Lincoln which resulted in an overpayment to Great State in the amount of $9,167.00. We decline to further address this issue inasmuch as we are reversing this cause. Points of error ten through twelve are overruled.

2. The judgment taxed costs against both Great State and Arrow Rig.

The judgment is reversed and remanded for a new trial.