IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 97-20690

———————————————

ECE TECHNOLOGIES INCORPORATED

                                    Plaintiff - Appellee

                    versus

CHERRINGTON CORPORATION; ET AL

                                    Defendants

CHERRINGTON CORPORATION

                                    Defendant - Appellant

*****************************************************************

CHERRINGTON CORPORATION

                                    Plaintiff - Appellant

versus

ECE TECHNOLOGIES INCORPORATED, doing business as
Eastman Cherrington Environmental

                                    Defendant - Appellee

———————————————

Appeal from the United States District Court
for the Southern District of Texas

———————————————

February 22, 1999

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge

        Today, we consider whether a set of commercial agreements

between the parties was in substance a loan, or whether the

agreements created a contractor-subcontractor relationship that

included a loan.  Whether the agreements violated Texas usury laws

turns on this characterization.  We hold that the district court erred in rejecting as a matter of law the assertion that this was a loan in violation of the usury laws.

I

In May 1995, Cherrington Corp. agreed that for $1.5 million it would sell certain equipment to Kyokuto Boeki Kaisha, Ltd., and build a horizontal drilling rig for it.  Cherrington lacked capital to finance the manufacture and could not obtain financing through a lending institution.  Recognizing Cherrington's unique ability to manufacture the highly specialized drilling equipment, KBK offered to prepay $900,000 of the purchase price to provide the necessary funds if Cherrington could obtain a letter of credit, but Cherrington was unable to obtain one.

David Barber, Cherrington's Chief Operating Officer, contacted Eastman Cherrington Environmental, Inc., and the two companies reached several agreements.  ECE's counsel, Mark Riley, prepared the documents and informed Barber that the form of the transaction documents was nonnegotiable.  The "Loan Agreement," "Security Agreement," and "Promissory Note" together provided for the $900,000 financing that Cherrington would receive, on which Cherrington would pay 12% annual interest.  KBK's $900,000 prepayment and final $600,000 payment, it was agreed, would go directly to ECE, which would then reimburse Cherrington an agreed upon share.

The Loan Agreement and the Note both contain usury savings clauses reducing any charge exceeding the legislative maximum to the lawful rate. The savings clause in section 11.6 of the Loan Agreement applied beyond that particular agreement to include "any Loan Document or agreement entered into in connection with such note."

In the "Assignment of Purchase Order" agreement, Cherrington agreed to transfer and assign all of its rights in the KBK purchase order to ECE. Finally, in the "Manufacturing Agreement", which included a Texas choice-of-law and forum clause, ECE hired Cherrington to perform engineering services and to manufacture the drilling rig in accordance with the purchase order, and to deliver the specified equipment after selling it to ECE. The agreement recited that KBK had consented to the assignment, but no representative of KBK signed the agreement.

The terms of the Manufacturing Agreement left Cherrington "responsible for furnishing the design, manufacture and delivery of the Drilling Rig," including the provision of "all supervision, inspection, labor, materials, tools, manufacture equipment and subcontracted items necessary," and did not appear to leave any responsibility with ECE. It did leave ECE the power to approve or reject any subcontractor employed by Cherrington.

Section 6.1 of the agreement provided a formula determining the amount Cherrington would receive for the manufacture, not to exceed the "Guaranteed Maximum Price" of $600,000, which would

3

include compensation for all costs incurred in design and manufacture. In addition, ECE was to receive a $20,000 "oversight fee," a $9,000 per month letter-of-credit fee, and half of the profits from the transaction (in no case less than $225,000). Finally, Cherrington warranted the rig and indemnified ECE "from and against any claim, loss, damage, expense or liability (including attorneys' fees and costs) that may result . . . ."

The agreements were all executed by July 6, 1995. On July 14, after ECE's bank issued a $900,000 letter of credit in favor of KBK, KBK paid the first installment of $900,000 to ECE to secure performance. The same day, ECE made its first advance to Cherrington of funds under the promissory note. Ultimately, ECE advanced a total of $825,026 to Cherrington.

During construction, disputes developed between Cherrington and ECE. There was a dispute over construction delays, and another over ECE's demand that Cherrington turn over to ECE the proceeds of a separate $900,000 receivable. Cherrington filed suit in California state court against ECE on October 10, 1995, and ECE filed a lawsuit against Cherrington and others on October 23, 1995. Cherrington's suit was removed, transferred, and consolidated with ECE's suit, in the Southern District of Texas. Various contract and tort claims were asserted. On December 5, 1995, Cherrington filed a counterclaim asserting usury, later amended to include breach-of-contract claims. Meanwhile, Cherrington completed the drilling rig, delivering it to KBK on October 30, 1995. All

4

parties executed a "Certificate of Substantial Completion" and "Statement of Acceptance and Approval."

On December 6, 1996, the district court granted ECE's motion for summary judgment on Cherrington's usury claim. It also granted Cherrington's motion for partial summary judgment on ECE's tortious interference claims, which are not at issue here. The remaining claims were tried in January, 1997 to a jury, which found breaches of contract on both sides and awarded damages. Cherrington elected to seek recovery of attorneys' fees for breach of contract under Tex. Civ. Prac. & Rem. Code § 38.001. The jury, however, found that a reasonable attorney's fee for prosecuting Cherrington's successful breach-of-contract claim was $0. Cherrington challenged this jury finding, but the district court denied that motion, as well as all post-judgment relief sought by ECE.

Cherrington appealed both the summary judgment rejecting its usury claim and the decision refusing to set aside the jury finding of $0 in reasonable attorneys' fees. ECE also gave notice appeal, but withdrew it.

## II

Settled by debtors, Texas has long been hostile to charges of interest the state thought were excessive. This policy cuts little slack for artful avoidance. It is not surprising then that Texas usury law focuses on the substance of a transaction, not on its form. "[I]n determining whether a loan transaction is usurious, it is substance rather than form that is investigated." <u>Fears v.</u>

5

_Mechanical & Indus. Technicians, Inc._, 654 S.W.2d 524, 530 (Tex. App.--Tyler 1983, writ ref'd n.r.e.); _see also_ _Najarro v. Sasi Int'l, Ltd._, 904 F.2d 1002, 1006 (5th Cir. 1990) (discussing Texas usury law); _Gonzales County Sav. & Loan Ass'n v. Freeman_, 534 S.W.2d 903, 906 (Tex. 1976) ("Charges which are in fact interest remain so, regardless of the label used."); _Skeen v. Slavik_, 555 S.W.2d 516, 521 (Tex. Civ. App.--Dallas 1977, writ ref'd n.r.e.) ("[W]here . . . a charge is admittedly compensation for the use, forbearance, or detention of money, it is, by definition, interest regardless of the label placed upon it or the artfulness with which it is concealed."); _id._ ("[W]e must look beyond the superficial appearances of the transactions to their substance in determining the existence or nonexistence of usury."); _Johns v. Jaeb_, 518 S.W.2d 857, 859 (Tex. Civ. App.--Dallas 1974, no writ) ("When money is advanced to enable one to engage in a business venture with the understanding that the advance and an added amount are to be returned, there is a loan, and the added amount is interest, which may not exceed the statutory maximum, regardless of the form of the transaction."); _Maxwell v. Estate of Bankston_, 433 S.W.2d 229, 231 (Tex. Civ. App.--Texarkana 1968, no writ) ("In determining the question of usury all devices are disregarded . . . [even] though usury may be covered under the guise of some additional and different consideration.").[1]

---

[1]ECE focuses on _Moser v. John F. Buckner & Sons_, 292 S.W.2d 668 (Tex. Civ. App.--Waco 1956, writ ref'd n.r.e). This case

We cannot say as a matter of law that in substance this was not a loan transaction. It appears on the summary judgment record that ECE's only role of any moment was to make advances to Cherrington to enable it to manufacture and deliver the drilling rig, and Cherrington performed the same duties that it would have performed had it merely obtained financing. The strongest counterargument is that ECE assumed liability for nonperformance of the obligations of manufacturing and delivering the drilling rig for KBK. The Assignment of Purchase Order stated that Cherrington assigned to ECE "all of Cherrington's right, title, and interest in and to the Purchase Order . . . and all of its obligations thereunder." The indemnity provisions, however, nearly undo this, since ECE could recover from Cherrington if KBK or a third party sued it.

The indemnity provisions do not completely cancel the effect of the assignment, though, because ECE's assumption of liability would presumably allow KBK to recover from ECE if Cherrington were judgment-proof. Thus, unlike a typical provider of financing, ECE might have faced liability beyond the amount of money it lent. This

---

involved a contractor who advanced money to the subcontractor. The court concluded that "the evidence is sufficient to sustain the jury's findings that payments made under these contracts were not made and received with the idea of interest but solely for a profit." Id. at 673. The present case, however, has a different procedural posture, since we are reviewing a summary judgment finding that there was no usury, not a jury finding to that effect. This is a meaningful distinction. The Moser court carefully emphasized that its holding was merely that the question was for the jury. See, e.g., id. at 672, 673-74.

does not as a matter of law preclude a trier of fact from a characterization of the transaction as a loan. KBK's status as a third-party beneficiary should not control the classification of the transaction between ECE and Cherrington. It appears on the summary judgment record that KBK neither bargained for this assignment nor was a party to the instrument itself; KBK appears virtually to have been a donee beneficiary. KBK sought out Cherrington because of its experience in the manufacture of the special slant drilling equipment it wanted. A trier of fact could reasonably conclude that ECE brought nothing to the table but money. The exacting terms of the deal with the passive role of the customer support the inference that ECE was paid for lending money.

ECE attempted to stay clear of the grasp of Texas usury law, but the usury savings clauses in the agreements were not effective, if usurious interest was in fact received. See Windhorst v. Adcock Pipe & Supply, 547 S.W.2d 260, 261 (Tex. 1977) ("By describing the conditions precedent to recovery of penalties in the disjunctive, the Legislature made it clear that only one such condition need occur to trigger penalties; either a contract for, a charge of or a receipt of usurious interest."); see also Cochran v. American Sav. & Loan Ass'n, 586 S.W.2d 849, 850 (Tex. 1979) (suggesting that receipt of funds is sufficient for a finding of usury); Victoria Bank & Trust Co. v. Brady, 779 S.W.2d 893, 901-02 (Tex. App.-- Corpus Christi 1989), rev'd on other grounds, 811 S.W.2d 931 (Tex. 1989).

8

Because this appeal involves only the district court's granting of ECE's motion for summary judgment, and not the denial of a cross-motion for summary judgment by Cherrington, we cannot announce how the district court should dispose of such a motion. Nonetheless, we offer some general principles to guide the district court's assessment of whether any genuine issues of material fact remain. Under Texas law, where a contract is not facially usurious, the question of whether there was an intent to commit usury is for the jury. See Moser, 292 S.W.2d at 671-72 (citing various cases). However, the only intent that the victim need establish is the intent to enter into a contract that is usurious. See, e.g., Alamo Lumber Co. v. Gold, 661 S.W.2d 926, 928 (Tex. 1983) ("[I]t is not the lender's subjective intent to charge usury that makes a loan usurious, but rather his intent to make the bargain that was made.").

The question thus reduces to whether the lender has provided some other consideration for any allegedly usurious charge. Cf. Texas Commerce Bank v. Goldring, 665 S.W.2d 103, 104 (Tex. 1984) ("[A] fee which entitled the borrower to a distinctly separate and additional consideration apart from the lending of money is not interest and cannot be the basis of usury."). We hold that the summary judgment record does not establish what Cherrington received for its payments to ECE, other than the use of its money. The district court, on appropriate motion, would need to determine whether the answer to this question requires resolution of a

genuine issue of material fact. If it does, then the case is for the jury.

III

The award of zero attorney's fees could be consistent with the evidence only if the state law authorized the trier of fact in its discretion not to award any fees. Texas law does not. To the contrary, Texas courts have found findings of "zero" or "none" on fees questions to be against the weight of the evidence and thus have required new trials limited to the fees issue. In <u>Elizabeth-Perkins, Inc. v. Morgan Express Inc.</u>, 554 S.W.2d 216, 219 (Tex. Civ. App.--Dallas 1977, no writ), the court held, "Although the jury was not bound to accept this testimony [concerning fees] absolutely, it was not at liberty to reject it totally in finding 'none' in answer to the question concerning reasonable attorney's fees." The Texas courts have followed this holding consistently. See <u>Great State Petroleum, Inc. v. Arrow Rig Serv., Inc.</u>, 706 S.W.2d 803, 812-13 (Tex. App.--Fort Worth 1986, no writ); <u>First Tex. Sav. Ass'n v. Dicker Ctr., Inc.</u>, 631 S.W.2d 179, 188 (Tex. App.--Tyler 1982, no writ). Here, Cherrington's expert on attorneys' fees testified that $125,000 would have been a reasonable fee for prosecuting Cherrington's breach-of-contract claim, and ECE's expert said he "would not disagree" with $75,000. The award of zero attorney's fees was thus against the weight of the evidence, regardless of whether the evidence is weighed using a federal or a state scale.

10

IV

For the reasons above, we reverse the district court's award of summary judgment on the usury claim and remand for further proceedings, including entry of summary judgment for Cherrington if appropriate. In addition, we set aside the jury finding of zero attorneys' fees and remand for trial on that issue.

REVERSED IN PART AND REMANDED.